FILED

2009 Dec-17  PM 02:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
BILLY CULVER,                  }
                               }
       Plaintiff,              }
                               }      CIVIL ACTION NO.
v.                             }      08-AR-0031-S
                               }
BIRMINGHAM BOARD OF            }
EDUCATION, et al.,             }
                               }
       Defendants.             }
```

**<u>MEMORANDUM OPINION</u>**

Plaintiff, Billy Culver ("Culver"), instituted the above-entitled action against the Birmingham Board of Education ("BBOE"), Odessa Ashley ("Ashley"), Carolyn Cobb ("Cobb"), Mike Higginbotham ("Higginbotham"), Willie James Maye ("Maye"), Dannetta Owens ("Owens"), Virginia Volker ("Volker"), April Williams ("Williams"), and Phyllis Wyne ("Wyne") in their individual and official capacities as members of the Birmingham Board of Education, as well as against Stan L. Mims ("Mims") and Wayman Shiver ("Shiver") in their individual and official capacities as former Superintendents of the Birmingham City Schools system (collectively "defendants"). Both former superintendents and a majority of the BBOE members are black. Culver, who is white, alleges that he was the subject of racial discrimination in defendants' decisions not to hire, transfer, or promote him to numerous positions for which he applied, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and in violation of 42 U.S.C. §§ 1981

and 1983.   Culver also claims that he was retaliated against by defendants, in violation of both Title VII and Title IX of the Education Amendments of 1972 (the Patsy T. Mink Equal Opportunity in Education Act), 20 U.S.C. §§ 1681 *et seq.*   The court has before it defendants' motion for summary judgment.   For the reasons that follow, defendants' motion for summary judgment will be granted in part and denied in part.   Although the EEOC's determinations are neither dispositive nor given deference, the court agrees with the EEOC's conclusion that "the evidence obtained during the investigation establishes that there is reasonable cause to believe that a violation of [Title VII] has occured," (Pl.'s Mot. to Substitute Exs., Ex. 1, at 1) and its separate conclusion that "[t]here is no evidence to support [Culver's] claim that he was discriminated against . . . in retaliation for having filed a charge of discrimination."   (Ex. 5 to Pl.'s Br. in Opp'n.)   The court, however, reached these same conclusions based on the record before it and not as the EEOC's echo.

## FACTS[1]

_____

1      Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."   Rule 56(c), F.R. Civ. P.   In accordance with Rule 56(c), the narrative statement of facts includes facts that are undisputed by the parties.   Where there is a dispute, the facts are presented in the light most favorable to Culver.   "The movant 'bears the initial responsibility of informing the district court of the basis of its motion' by identifying those portions of the record that demonstrate the absence of genuine issues of material fact."   *Baldwin County, Ala. v. Purcell Corp.*, 971 F.2d 1558, 1563 (11th Cir. 1992) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).   Thereafter, the burden shifts to the non-movant to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact or that the moving party is not entitled to judgment as a matter of law.   *See* Rule 56(e), F.R. Civ. P.;

The court has considered all depositions and documents submitted in support of, and in opposition to, the motion.  The submissions of the parties, viewed in the light most favorable to the nonmoving party, establish the following relevant facts:

Culver claims that he was the subject of racial discrimination because the BBOE refused to hire, promote, or transfer him to numerous coaching and teaching positions for which he applied within the Birmingham City Schools system ("the System").  These positions included head football coaching positions, head girls basketball coaching positions, and several teaching positions at various schools within the System.  Although the BBOE is the ultimate decision-maker in hiring and firing, the BBOE played no active role in interviewing, or otherwise interacting with Culver.  The *de facto* decision-makers regarding these decisions are the principals at each school, whom Culver does not sue.  Defendants have never denied that Culver meets the minimum qualifications for the positions he sought.  Rather, they generally assert that the most qualified applicants were hired for those positions.  In response, Culver claims that he was equally or more qualified than some or all of the candidates who were hired.

Culver is experienced at both playing and coaching football.  During junior high and high school, he played running back and

---

see also *Celotex,* 477 U.S. at 324.  Conclusory allegations or legal conclusions are not enough.  *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

linebacker.  (Pl.'s Br. in Opp'n, at 2; Culver Dep. 17:23-18:7.)
Culver played "on an off for two years in a semipro league" while
he was in the Navy.  (Pl.'s Br. in Opp'n, at 2; Culver Dep. 18:3-
5.) Culver joined the United States Army after graduating from high
school and served for three years before being honorably discharged
in 1979.  (Pl.'s Br. in Opp'n, at 1; Culver Dep. 9:2-10.)
Beginning in 1981, he served in the Army Reserves for a year, after
which he joined the United States Navy.  (Pl.'s Br. in Opp'n, at
1; Culver Dep. 9:10-13.)  In 1992 Culver was honorably discharged
after ten (10) years of service in the Navy, and in 1996 he began
pursuing a college degree.  (Pl.'s Br. in Opp'n, at 1; Culver Dep.
16:4-5; 25:4-5.)

     After being discharged from the Army, Culver served as head
coach of youth athletic league football teams in Colorado Springs,
Colorado for three (3) years.  (Pl.'s Br. in Opp'n, at 2; Culver
Dep. 13:10-20.)  During this three (3) year period, Culver coached
a number of different age levels having varying degrees of
familiarity with the game of football.  (Culver Dep. 13:10-20.)
After Culver enlisted in the Navy he served for three years as head
coach of the men's flag football[2] team "in the base league of the

_____

     [2] Flag football is different from tackle football in few ways.  First,
in flag football each side only has seven (7) players, all of whom are
eligible receivers; whereas in tackle football each team has eleven (11)
players, with the five interior linemen being ineligible recievers.   (Defs.'
Reply Br., at 15 n.6; Culver Dep. 17:4-5.) In flag football players wear belts
with velcro "flags" on them and a player is down when their flag is pulled by
an opposing player.  (Defs.' Reply Br., at 15 n.6; Culver Dep. 17:5-7.)  In
tackle football a player is not down until he is tackled by an opposing

USS Sylvania" in Norfolk, Virginia.  (Pl.'s Br. in Opp'n, at 2; Culver Dep. 16:1- 17:1.)  Upon being relocated to Milton, Florida, Culver served as head coach of the men's flag football team at NAS Whiting Field from 1988 until 1991.  (Culver Dep. 25:6-12; Defs.' Ex. 1 to Culver Dep.)  In addition to coaching football, Culver also coached basketball while in the military.  (Pl.'s Br. in Opp'n, at 5; Culver Dep. 255:22-256:2.)

In 1996, Culver began attending college at Gadsden State Community College.  (Culver Dep. 25:19-23.)  The following year he transferred to Jacksonville State University, where he earned a Bachelor of Science degree in Recreation Administration in 2000, and a Master of Science degree in Education in 2002.  (Culver Dep. 26:9-27:3; Defs.' Ex. 1 to Culver Dep.)  While in college Culver worked for the Boys and Girls Club of Calhoun County, where he coached, *inter alia*, middle school aged boys basketball and high school aged girls basketball.  (Culver Dep. 29:15-30:11; Defs.' Ex. 1 to Culver Dep.)

In 2002, Culver was hired by the BBOE as a physical education and health teacher at Charles A. Brown Elementary School.  (Culver Dep. 36:15-22; Defs.' Ex. 1 to Culver Dep.)  When he began teaching at Brown he was already a certified teacher and has continuously

---

player. (Defs.' Reply Br., at 15 n.6; Culver Dep. 17:5-7.) Although, these rule differences may have an effect on game strategy, the same basic rules apply in both flag and tackle football.  According to Culver, at that time the military would not allow its members to play tackle football.  (Pl.'s Br. in Opp'n, at 2; Culver Dep. 16:18-22.)

maintained his certification since that time. (Culver Dep. 259:8-14.) Between 2003 and 2006 Culver held several different coaching positions within the System, including assistant baseball coach at Ensley High School, assistant girls volleyball coach at Huffman High School, head girls tennis coach at Ramsay High School, head girls volleyball coach at Huffman, assistant girls basketball coach at Ensley, and head fast pitch softball coach at Ensley. (Defs.' Ex. 1 to Culver Dep.) While serving in each of these positions, Culver remained a physical education and health teacher at Brown. (Defs.' Ex. 1 to Culver Dep.) As assistant girls basketball coach at Ensley, Culver conducted practices and coached a game in head coach Roderick Jackson's stead while Jackson was prosecuting his Title IX retaliation claim against the BBOE. (Pl.'s Br. in Opp'n, at 4; Culver Dep. 87:20-89:4; 151:20-22.) *See Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005).

From the fall of 2006 until this action was filed, Culver applied for a number of different teaching and coaching positions within the System, thirteen (13) of which are properly the subject of defendants' motion for summary judgment. Each of these positions is briefly discussed below.

## 1.  Health/Physical Education Teacher - Huffman High School (September 2006)

Demetrius Mitchell, who is black, was rehired for this position at Huffman after having been nonrenewed at the end of the 2005-2006 school year. Culver communicated his interest in the

position and he was passed over for Mitchell who Culver claims was unqualified for the position because he did not posses a teaching certificate. (Pl.'s Br. in Opp'n, at 18.) It is undisputed that Culver did not apply for this position. (Pl.'s Br. in Opp'n, at 17; Defs.' Reply Br., at 15.) Culver argues that he did not apply because the position was not posted, as is required for vacant positions. (Pl.'s Br. in Opp'n, at 17.) Culver did, however, express interest in the physical education position to the then principal at Huffman, Willie Goldsmith. (Goldsmtih Dep. 7:22-8:2.)

Defendants argue that they were not required to post this position because it was not considered vacant, stating:

> Mr. Mitchell was nonrenewed at the conclusion of the 2005-2006 school year along with many other nontenured teachers due to uncertainty about whether funding was available to continue these positions (Allen Affd. ¶2). Once the Board confirmed funding was available for Mr. Mitchell's position, he was rehired in September of 2006. Thus, the position was not considered vacant because (a) it would have been abolished had funding not been available, and (b) the employee who previously occupied the position was rehired after the Board learned funding was available (Allen Affd. ¶2).

(Defs.' Reply Br., at 15 n.5.)

**2.   Head Girls Basketball - Woodlawn High School (October 2006)**

Culver voluntarily abandons all claims relating to the head girls basketball coaching position at Woodlawn. (Pl.'s Br. in Opp'n, at 10 n.4.)

**3.   Head Girls Basketball - Jackson-Olin High School (November 2006)**

Michael Clisby, who is black, was appointed to this position after Roderick Jackson resigned from the position mid-season over disputes with the BBOE.  (Pl.'s Br. in Opp'n, at 11-12; Defs.' Reply Br., at 9-10.)   Culver did not apply for this position because the position was not posted. (Pl.'s Br. in Opp'n, at 12.) Culver's complaint regarding Clisby's interim appointment is two-fold.  First, Culver claims that Clisby had not applied for the position when it was originally posted in June 2006 (when Roderick Jackson was initially hired), whereas Culver had applied for the position. (Pl.'s Br. in Opp'n, at 12.)  Second, Culver points out that Clisby had been previously suspended from coaching football because he had played a player who was not enrolled at Jackson-Olin at that time.  (Pl.'s Br. in Opp'n, at 12.)  Culver claims that these facts make Clisby an objectively unreasonable choice by the BBOE. (Pl.'s Br. in Opp'n, at 25.)

Defendants argue that Clisby was quickly hired as interim head coach because "Ms. Parson [the principal at Jackson-Olin at the time] had to make a decision pretty quick in order to get somebody in to kind of keep the girls together and to get them trained so that they could at least, you know, be respectable at the next game." (Moore Dep. 129:7-12.)  Defendants contend that Clisby was appointed because he had experience as a head basketball coach at Jackson-Olin and because he was currently teaching at Jackson-Olin, and Parson preferred to appoint a coach that was already at the

school, given the circumstances.   (Defs.' Reply Br., at 9-10 &
nn.3-4; Moore Dep. 86:14-22; 92:8-23; 130:1-4; 132:11-19.)   No
other candidates were considered by Parson.   (Moore Dep. 86:14-22;
128:15-21.)

**4.   Head Girls Basketball - Huffman High School (Fall 2006)**

Kathi Johnson, who is black, was hired as the interim head
girls basketball coach at Huffman in the fall of 2006.   It is
undisputed that Culver did not apply for this position because the
position was not posted.   (Pl.'s Br. in Opp'n, at 26.)   He had,
however, already expressed his interest in obtaining a position at
Huffman to the then principal, Willie Goldsmith.   Culver's only
complaint regarding Johnson's interim appointment is that he was
more qualified that Johnson because he had more years of basketball
coaching experience, when his work during his time in the military
and with the Boys and Girls Club is considered.   (Pl.'s Br. in
Opp'n, at 26.)   He also claims that he "knew the students at the
school."   (Pl.'s Br. in Opp'n, at 26.)

Defendants argue that Johnson was the better qualified
candidate because she was currently serving as the junior varsity
girls basketball coach at Huffman, because she was familiar with
the girls on the varsity team, and because Principal Goldsmith
considered her to be a "good [basketball] coach."   (Defs.' Reply
Br., at 8; Goldsmith Dep. 20:11-12.)

**5.   Head Football - Jackson-Olin High School (Fall 2006)**

9

Michael Clisby, who is black, was hired as the head football coach at Jackson-Olin in the fall of 2006.  It is undisputed that Culver also applied for this position.  Culver's only complaint regarding the BBOE's decision to hire Clisby is that Clisby had previously been suspended from coaching "for playing a football player who was not enrolled at Jackson-Olin." (Pl.'s Br. in Opp'n, at 25.)  Culver argues that the fact that the BBOE would pass over him for Clisby, knowing that Clisby had been disciplined for misconduct is a decision that no reasonable person would have made. (Pl.'s Br. in Opp'n, at 25.)

Defendants argue that Clisby was well-qualified as a head football coach.  He had "many years of football coaching experience," and he had been serving as the head football coach at Ensley before Ensley and Jackson-Olin merged.  (Defs.' Reply Br., at 3; Moore Dep. 93:18-94:12.)  Therefore, as defendants argue, his selection as head football coach also provided continuity for the program.

## 6.   Health Teacher - Jackson-Olin High School (January 2007)

According to defendants, Donald Harris, the health teacher at Jackson-Olin, died on November 13, 2006. (Defs.' Br. in Supp., at 5; Allen Aff. ¶ 2.)  A black substitute teacher was hired, and the position was posted in January 2007. (Defs.' Brief in Supp., at 5; Allen Aff. ¶ 2.)  However, according to defendants, no interviews were conducted, and the substitute teacher served for the remainder

of the school year as a result of doubts regarding whether the position would be cut due to a reduction-in-force that was declared by the BBOE on February 27, 2007.  (Defs.' Br. in Supp., at 5; Allen Aff. ¶ 2.)   In his brief, Culver provides no response to defendants' legitimate non-discriminatory reason for not hiring him.

**7.   Head Football - Woodlawn High School (August 2007)**

Stacey Gill, who is black, was hired as head football coach at Woodlawn in August 2007.  It is undisputed that Culver also applied for this position.  Culver argues that he was more qualified than Gill for three reasons.  First, Culver points out that his academic record in college far outshone that of Gill.  (Pl.'s Br. in Opp'n, at 9 & Exs. 16 & 17.)   Next, Culver argues that the BBOE had previously suspended Gill as an assistant coach at West End High School "due to his actions on the sideline after being ejected from a game by engaging in conduct that was not becoming a coach." (Pl.'s Br. in Opp'n, at 8.)  Culver argues that the fact that the BBOE would pass over him for Gill, knowing that Gill had been disciplined for misconduct is a decision that no reasonable person would have made.  (Pl.'s Br. in Opp'n, at 24-25.)  Finally, Culver points out that when Gill was hired in August 2007, his teaching certificate had expired on June 30, 2007.  (Pl.'s Br. in Opp'n, at 8; 24.)  Culver claims that the BBOE departed from its stated policies and procedures by hiring Gill because he did not possess

a "valid Alabama Professional Educators Certificate" at the time he was hired.  (Pl.'s Br. in Opp'n, at 8; 24.)

Defendants do not dispute that Gill did not possess a teaching certificate at the time he was hired.  Instead, defendants simply argue that the BBOE has discretion to waive the certificate requirement because a clause in the list of qualifications states "such alternatives to the above qualifications as the Board may find appropriate and acceptable."  (Ex. 31 to Pl.'s Br. in Opp'n.)

## 8.   Head Football - Carver High School (September 2007)

Beshaw Smith, who is black, was appointed interim head football coach at Carver High School in September 2007.  It is undisputed that Culver also applied for this position.  It is also undisputed that after interviews, no candidate was selected, and instead Smith was appointed interim head football coach.  (Pl.'s Br. in Opp'n, at 18; Defs.' Reply Br., at 16.)  Culver complains that this was a deviation from normal procedure.  Culver also argues that Smith was not qualified to be a head football coach because he did not possess "valid Alabama Professional Educators Certificate" at the time he was hired.  (Pl.'s Br. in Opp'n, at 25 & Ex. 31.)

Defendants respond to Culver's first complaint, stating that it is not uncommon for "a principal [to] request additional applications and conduct separate interviews for head coaching positions."  (Defs.' Reply Br., at 16.)  Moreover, defendants do

not dispute that Smith did not possess a teaching certificate at the time he was hired.   (Defs.' Reply Br., at 16.)  Instead, defendants simply argue that the BBOE has discretion to  waive the certificate  requirement  because  a  clause  in  the  list  of qualifications  states  "such  alternatives  to  the  above qualifications as the Board may find appropriate and acceptable." (Defs.' Reply Br., at 16.)

**9.    Head Girls Basketball - Huffman High School (October 2007)**

Jeff Hill, who is black, was hired as head girls basketball coach at Huffman in October 2007.   It is undisputed that Culver also applied for this position.   Culver's complaint regarding the BBOE's decision to hire Hill is twofold.   First, Culver contends that Jeff Hill did not possess a valid teaching certificate when he was hired in October 2007.   However, at the time he was hired Hill's  teaching  certificate  was  actually  valid  and  not  set  to expire until June 30, 2008.   (Ex. 28 to Pl.'s Br. in Opp'n.) Culver also offers the fact that Hill violated AHSAA rules by entering a student in a track relay under an assumed name in April 2008  as  evidence  that  the  BBOE's  decision  to  hire  Hill  was unreasonable.   (Ex. 29 to Pl.'s Br. in Opp'n.)  However,  Hill's infractions did not occur until six (6) months after the decision to hire Hill over Culver had been made.

**10.  Head Girls Basketball - Woodlawn High School (October 2007)**

Keith  Jackson,  who  is  black,  was  hired  as  head  girls

basketball coach at Woodlawn in October 2007.  (Defs.' Br. in
Supp., at 8; Moore Dep. 133:22-134:23.) Defendants assert that they
hired the most qualified candidate for this position, citing
Jackson's experience as both an assistant and a head basketball
coach within the System.  (Defs.' Br. in Supp., at 8; Moore Dep.
133:22-134:23.)   In his brief, Culver provides no response to
defendants' legitimate non-discriminatory reason for not hiring
him.

11.  **Head Girls Basketball - Jackson-Olin High School (October
     2007)**

     Michael Clisby, who is black, was hired as the full time head
girls basketball coach at Jackson-Olin in October 2007 after
serving as the interim girls basketball coach during the 2006-2007
season.  Defendants argue that Clisby was hired to give continuity
to the program and because he had experience coaching basketball.
(Defs.' Br. in Supp., at 8; Moore Dep. 131:18-133:21.)   In his
brief, Culver provides no response to defendants' legitimate non-
discriminatory reason for not hiring him.

12.  **Head Girls Basketball - Hayes High School (October 2007)**

     Ralph Williams, who is black, was hired as the head girls
basketball coach at Hayes High School in October 2007.  It is
undisputed that Culver also applied for this job. (Defs.' Mot. to
Am. Evidentiary Materials, Ex. A, at 4.)  Culver claims that the
BBOE departed from its stated policies and procedures by hiring

Williams because he was not "a full-time academic teacher" at the time he was hired, nor did he thereafter "obtain a full-time academic teacher position with the Birmingham City Schools system." (Pl.'s Br. in Opp'n, at 27; Defs.' Mot. to Am. Evidentiary Materials, Ex. A, at 1.)

Defendants argue that Williams was the most qualified candidate for the position as he had "a vast amount of experience coaching basketball and won several State championships." (Defs.' Br. in Supp., at 7; Moore Dep. 124:16-125:17.)  In response to Culver's allegation that the BBOE departed from its stated job requirements for coaches, the BBOE argues that it has discretion to do so because a clause in the list of qualifications states "such alternatives to the above qualifications as the Board may find appropriate and acceptable."

## 13.  Head Football - Jackson-Olin High School (March 2008)

Shawn Gregory, who is black, was hired as the head football coach at Jackson-Olin in March 2008.  Defendants do not dispute that Culver also applied for this position.  Culver claims that the BBOE departed from its stated policies and procedures by hiring Gregory because he did not possess a "valid Alabama Professional Educators Certificate" at the time he was hired.  (Pl.'s Br. in Opp'n, at 25 & Ex. 31.)

Defendants do not dispute that Gregory did not possess a teaching certificate at the time he was hired.  Instead, defendants

simply argue that the BBOE has discretion to waive the certificate requirement because a clause in the list of qualifications states "such alternatives to the above qualifications as the Board may find appropriate and acceptable." (Ex. 31 to Pl.'s Br. in Opp'n.)

On October 24, 2006, Culver filed EEOC charge number 420-2007-00409, alleging that the BBOE had discriminated against him in the hiring process on the basis of race and age. (Ex. 3 to Pl.'s Br. in Opp'n.) After efforts at conciliation failed, the EEOC issued Culver a right-to-sue letter. (Second Am. Comp. ¶ 37.) Thereafter, Culver continued to apply to positions with the BBOE, but was not hired. On January 18, 2007, Culver filed EEOC charge number 420-2007-01503, alleging that the BBOE had refused to hire him for the positions that he had applied for from October 24, 2006 until January 18, 2007 in retaliation for his filing the initial charge of discrimination with the EEOC. (Ex. 4 to Pl.'s Br. in Opp'n.) The EEOC issued Culver a right-to-sue letter on charge 420-2007-01503 on September 30, 2008. (Second Am. Comp. ¶ 43.)

On January 4, 2008, before he received his final right-to-sue, Culver filed his complaint in this court alleging violations of § 1981 and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"). On February 28, 2008, Culver amended his complaint to add claims under 42 U.S.C. § 1983, the Equal Protection Clause, and Title IX. Defendants answered Culver's amended complaint on March 14, 2008. Although several months

16

beyond the deadline set in the scheduling order, Culver, on November 20, 2008, sought leave to amend his complaint for the second time.  After conducting a hearing on Culver's motion on December 19, 2008, the court granted the motion, deemed the second amended complaint filed and deemed it timely.  Defendants answered Culver's second amended complaint on January 13, 2009.  On August 6, 2009, the court, pursuant to the United States Supreme Court's holding in *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343 (2009), ordered Culver to abandon his ADEA claim in favor of pursuing his other claims, or to abandon all other claims and pursue his ADEA claim alone.  On August 14, 2009, Culver abandoned his ADEA claim.  Three (3) days later the court entered an order dismissing the ADEA claim with prejudice and certifying said judgment as a final judgment pursuant to Rule 54(b), F.R. Civ. P. Plaintiff did not appeal from that order, and the time for such an appeal has passed.  On September 17, 2009 defendants filed their motion for summary judgment.  The issues have been fully briefed by the parties.

**ANALYSIS**

I.   *Abandoned Claims*

Before moving to the merits of any of Culver's claims, summary judgment is appropriate on several claims simply because Culver has voluntarily abandoned them.  First, Culver expressly states in his brief that "[t]he position awarded to George Wheeler is not

17

contested." (Pl.'s Br. in Opp'n, at 10 n.4.) Therefore, summary judgment will be granted as to Culver's claims arising from defendants' decision to not hire him for the head girls basketball coaching position at Woodlawn in October 2006.

Second, in his brief Culver states that "[a]s to the individual defendants in their individual capacities, plaintiff does not oppose the dismissal of the Section 1983 monetary claims as to them." (Pl.'s Br. in Opp'n, at 14.) Therefore, summary judgment will be granted as to Culver's § 1983 claims against Ashley, Cobb, Higginbotham, Maye, Owens, Volker, Williams, Wyne, Mims, and Shiver ("the individual defendants"), in their individual capacities.

Third, in his brief, Culver declines to address defendants' legitimate non-discriminatory reasons for not hiring Culver for the health teacher position at Jackson-Olin in January 2007, the head girls basketball coaching position at Woodlawn in October 2007, and the head girls basketball coaching position at Jackson-Olin in October 2007. "In opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him.'" *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (quoting *Ryan v. Int'l Union of Operating Eng'rs, Local 675*, 794 F.2d 641, 643 (11th Cir. 1986)). "[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp*, 43 F.3d at 599 (citing *Road*

*Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994)).   Therefore, because Culver failed to brief the issues regarding the above-mentioned positions, summary judgment will be granted as to Culver's claims arising from the decisions not to hire him for those positions.

Finally, it is likely that defendants seek summary judgment on Culver's claims arising from defendants' decision not to hire him for the physical education teaching position at Huffman in the fall of 2007 only out of an "abundance of caution," because no such claims are alleged in any of Culver's complaints.   It is axiomatic that the court cannot dismiss a claim that has not been made. Footnote eight (8) on page seventeen (17) of Culver's brief states:

> Culver applied for the physical education position that was posted on June 21, 2007 which was awarded to Jeffery Hill, African American.  Px. 30 (Bham BOE Culver Page 540).  This shows that when posted, Culver applied for positions.  For the position that Hill received, no reasons are given for selecting Hill instead of Culver. Genuine issues of fact remain on that position, too.

(Pl.'s Br. in Opp'n, at 17 n.8.)  After a review of all three of Culver's complaints it is clear that Culver never states a claim based on a decision not to hire him for the physical education teaching position at Huffman in the fall of 2007.   In paragraph forty (40) of Culver's second amended complaint he simply states that he sought "Physical Education and Health positions at Huffman High School" after he had filed an EEOC charge, but does not give any facts sufficient to give anyone notice of a basis or bases for

19

his claims.  (Second Am. Comp. ¶ 40.)  Culver also states in his second amended complaint that "Plaintiff has sought other teaching and coaching positions" (Second Am. Comp. ¶ 29) and "[o]n information and belief, those teaching and coaching positions were filled by persons who were African-American and/or younger than the plaintiff."  (Second Am. Comp. ¶ 30.)  Likewise, this allegation fails to give anyone notice of what claim(s) he is attempting to assert.  Culver has not asserted any claim regarding a decision not to hire him for the physical education teaching position at Huffman in the fall of 2007.  Therefore, asking the court to grant summary judgment on a non-existent claim is an unnecessary exercise of caution.

II.  *Culver's Claims Against the Individual Defendants*

Summary judgment is due to be granted on all of the claims against the individual defendants in both their individual (as conceded) and their official capacities (not conceded).  First, in his brief, plaintiff acknowledges that a claim under Title VII, whether for race discrimination or for retaliation, cannot be maintained against any of the individual defendants, but instead is only maintainable against the BBOE.  "The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act."  *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).  This is because Title VII requires that Culver show the unlawful employment practice was

perpetrated by an **employer**.  *See* 42 U.S.C. §§ 2000e-2 (2006).  As the Eleventh Circuit noted in *Smith v. Lomax*, the superintendent and individual members of a school board cannot be considered employers; it is the board itself that is the employer.  *See Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995).  The employer in this action is the BBOE, not the individual defendants in their individual capacities.  The § 1983 claims against the individual defendants in their official capacities are  superfluous.  The are the same thing as the § 1983 claim against the BBOE.

Strangely, Culver fails to limit his retaliation claim under Title IX to the BBOE.  The United States Supreme Court held in *Jackson v. Birmingham Board of Education*, *supra*, that Title IX authorizes claims for retaliation when the plaintiff has complained of sex discrimination.  *See Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005).  Although not directly addressed by the Court, it is clear that to state a claim of retaliation under Title IX based on an adverse employment action an **employer** must have engaged in retaliatory conduct.  Here, the individual defendants cannot be subjected to such a suit because they are incapable of taking adverse employment actions individually.  It is only the employer, the BBOE as an entity, through its human agents, that takes adverse employment actions.  Therefore, a claim of retaliation under Title IX based on an adverse employment action cannot be maintained against the "individual employees whose

actions would constitute a violation of the Act." *See Busby*, 931 F.2d at 772.  Accordingly, summary judgment is due to be granted as to Culver's claims for retaliation under Title IX insofar as they are against the individual defendants whether in their individual or in their official capacities.

In his second amended complaint, Culver also alleges that the individual defendants, in both their individual and official capacities, violated 42 U.S.C. § 1983[3] when "Plaintiff was discriminated against on the basis of his race in promotion, or transfer to the positions that he sought and in his terms, conditions, and privileges of employment" and also when Culver was allegedly retaliated against.  (Second Am. Comp. ¶ 47.)  As already noted the § 1983 claims for money damages against the individuals have been eliminated.

Not only has Culver abandoned his § 1983 claims against the individual defendants in their individual capacities,[4] but "[a] § 1983 action may not . . . be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement, such as Title VII." *Patterson v. County of Oneida*,

---

[3] Culver actually alleges separate violations of 42 U.S.C. §§ 1983 and 1981.  (*See* Second Am. Comp. ¶¶ 47.)  However, in his brief, Culver acknowledges that his § 1981 claim merges into his § 1983 claim, making them the same claim.  (Pl.'s Br. in Opp'n, at 14.) Therefore, the court only addresses the § 1983 claim because any action as to it applies equally to the claims that Culver attempts to assert under § 1981.

[4] Even if Culver had not abandoned his § 1983 claims against the individual defendants in their individual capacities, they would be entitled to summary judgment as to those claims on the basis of qualified immunity.

375 F.3d 206, 225 (2d Cir. 2004); *see also Charles v. Scarberry*, No. 08-10773, 2009 WL 2424546, at *2 n.4 (11th Cir. Aug. 10, 2009). Culver does not allege any additional wrongdoing by defendants that would give rise to a separate § 1983 claim. Instead, it is the same conduct that Culver claims violates Title VII that he says violates § 1983. "[A]n allegation of a Title VII violation **cannot provide the sole basis** for a section 1983 claim." *Charles*, 2009 WL 2424546, at *2. Additionally, "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). Therefore, any § 1983 claim against the BBOE that is displaced by Culver's Title VII claim would be similarly displaced as against the individual defendants in their official capacities because such claims are, in actuality, against the BBOE. Culver does not allege, nor is there any evidence to suggest, that the BBOE has a policy or regular practice of refusing to hire white applicants or to prefer blacks over whites. Some proof is required to proceed against the BBOE on a § 1983 claim under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Finally, Culver asserts that defendants' conduct also constitutes a violation of the Equal Protection Clause (*See* Second Am. Comp. ¶ 48.) "'A Title VII plaintiff is not precluded from

bringing a concurrent § 1983 cause of action,' such as a claim for denial of equal protection, 'so long as the § 1983 claim is based on a distinct violation of a constitutional right.'"  *Patterson*, 375 F.3d at 225 (quoting *Gierlinger v. New York State Police*, 15 F.3d 32, 34 (2d Cir. 1994)).  Culver pleads no facts that state an Equal Protection violation.  In fact, other than in paragraph 48 of his second amended complaint, Culver never mentions the Equal Protection Clause.  It is clear to this court that paragraph 48 was added as an afterthought to prevent a dismissal of Culver's § 1983 claim at this juncture.  This attempt to bolster his complaint is unavailing. Culver does not allege any separate constitutional violation that would entitle him to relief under § 1983 against any defendant.  Accordingly, summary judgment will be granted as to all § 1983 claims.

III. *Culver's Retaliation Claims*

Culver alleges two separate claims for retaliation.  First, Culver claims that the BBOE refused to hire him for the positions that he applied for in retaliation for aiding coach Roderick Jackson with his Title IX retaliation claim.  Second, Culver claims that the BBOE denied him the positions for which he applied from October 24, 2006 until January 18, 2007 in retaliation for his having filed EEOC charge 420-2007-00409, a violation of Title VII.

A.  Culver's Title IX Retaliation Claim

In *Jackson v. Birmingham Board of Education*, *supra*, the

24

Supreme Court held that the language of Title IX prohibiting educational institutions that receive federal funding from discriminating "on the basis of sex" was sufficiently broad enough to prohibit retaliation against an individual who complains of Title IX violations against others.   However, since *Jackson*, neither the Supreme Court nor the Eleventh Circuit has established a framework by which to evaluate a claim for retaliation under Title IX.   In *Ross v. Corp. of Mercer Univ.*, 506 F. Supp. 2d 1325, 1359 (M.D. Ga. 2007), a district court within the Eleventh Circuit persuasively held:

> When it announced the holding in Jackson, the Supreme Court failed to provide any guidance on how to evaluate Title IX retaliation claims.   To date, the Eleventh Circuit does not appear to have expressly set forth the elements for a retaliation claim under Title IX either. . . . Nevertheless, most courts that have addressed the issue have imported the standards for a retaliation claim under Title VII to establish the elements necessary to constitute a retaliation claim under Title IX.

*Id.*

"To make a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he engaged in an activity protected under Title VII; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Corbitt v. Home Depot U.S.A., Inc.*, --- F.3d ---, No. 08-12199, 2009 WL 4432654, at *14 (11th Cir. Dec. 4, 2009) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)).   Therefore, in order to make out

a *prima facie* case of retaliation under Title IX, a plaintiff must show that: (1) he engaged in an activity protected under Title IX; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.

The Code of Federal Regulations provides protection for an individual from retaliation "because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part" or under Title IX. 34 C.F.R. § 100.7(e) (2009). Culver argues that when he stepped in for Roderick Jackson at Ensley to run practices and coach a game while Jackson was prosecuting his Title IX claim he was providing assistance to the prosecution of a Title IX claim. While it is doubtful that the language of Title IX is broad enough to encompass Culver's activities as assistant girls basketball coach, the court will assume *arguendo* that Culver's activity constituted protected activity for the purposes of a Title IX retaliation claim.

It is undisputed that Culver suffered an adverse employment action.  He was not hired for any of the positions he sought. Thus, the court considers the second element of Culver's *prima facie* case under Title IX established.

The *sine qua non* of a claim of retaliation is that there be a causal connection between plaintiff's protected activity and the

26

adverse employment action, such that a logical link between the two elements may be drawn.   "'To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated.'"   *Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)).   The more time that passes between the protected activity and the adverse employment action, the more tenuous the connection between the two becomes.   *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'").   "Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Shannon v. Potter*, 335 Fed. Appx. 21, 26 (11th Cir. 2009) (citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)).

Culver offers no direct evidence tending to suggest, much less to prove, that the BBOE refused to hire him because he assisted coach Roderick Jackson in coaching the Ensley girls basketball team while Jackson was simultaneously prosecuting a Title IX claim

against the BBOE.  Culver claims that when Jackson stepped down
from the head girls basketball coaching position at Jackson-Olin he
tried for "two weeks straight" to contact the principal, Parsons,
about applying for the vacant position, but that Parsons never
mentioned to the BBOE or the athletic director that he had called.
(Pl.'s Br. in Opp'n, at 12.)  Despite Culver's hopes, this simply
does nothing to provide direct evidence that Culver was not hired
because of his "protected activity."

Moreover, a significant period of time elapsed between
Culver's protected activity and the alleged retaliation.  As the
defendants correctly point out, Culver's "assistant coaching duties
would have ended at the conclusion of basketball season in February
or March 2006 . . . . Plaintiff does not assert that any
retaliatory actions were taken against him with respect to the
above-referenced 'protected activity' until the beginning of the
2006-2007 school year when he met with Ms. Parsons." (Defs.' Reply
Br., at 27.)  The significant lapse in time between Culver's
"protected activity" and any adverse employment actions, combined
with the lack of other evidence, precludes any jury finding of
causal connection.  Culver's claim for retaliation under Title IX
fails as a matter of law, and summary judgment is due to be
gratned.

    B.   <u>Culver's Title VII Retaliation Claim</u>

As noted above, "[t]o make a prima facie case of retaliation

under Title VII, a plaintiff must show that: (1) he engaged in an activity protected under Title VII; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Corbitt v. Home Depot U.S.A., Inc.*, --- F.3d ---, No. 08-12199, 2009 WL 4432654, at *14 (11th Cir. Dec. 4, 2009) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001))."

The existence of the first two elements here are undisputed, and are taken as established. (Defs.' Br. in Supp., at 27) ("Defendants do not contest that the filing of an EEOC charge is considered protected activity and the non-receipt of a promotion can be considered an adverse employment action."). However, once again, Culver offers no direct evidence to establish a causal connection between his EEOC charge and his non-receipt of the positions that he applied for between October 24, 2006 and January 18, 2007. His Title VII claim is based on the fact that he was not hired for several positions with the BBOE that he had applied for after he filed his first EEOC charge.

As noted above, "'[t]o establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated.'" *Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)). The

more time that passes between the protected activity and the adverse employment action, the more tenuous the connection becomes. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"). "Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Shannon v. Potter*, 335 Fed. Appx. 21, 26 (11th Cir. 2009) (citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)).

In his brief, Culver addresses his Title IX and Title VII retaliation claims together, devoting all of his discussion to the fact that Culver was assisting Roderick Jackson at Ensley while Jackson was pursuing his Title IX claim against the BBOE. However, this fact is inapposite to the analysis of Culver's Title VII retaliation claim. Culver provides no other argument to link BBOE's decisions not to hire him to the filing of his EEOC charge.

Tellingly, in his complaint Culver does not list the dates on which he applied for the positions he sought after filing his first EEOC charge. Instead, he simply provides a laundry list of the positions for which he applied in a single paragraph of his second

amended complaint.[5]  This single allegation is simply insufficient
to establish a causal link.   If the court is to make a
determination that the adverse employment action suffered by a
plaintiff and his protected activity "are not wholly unrelated,"
*Shannon*, 292 F.3d at 716, bearing in mind that "the temporal
proximity must be 'very close,'" *Clark County School Dist.*, 532
U.S. at 273, the plaintiff must meet his initial burden of showing
facts sufficient to establish such temporal proximity.   *See* I
Barbara T. Lindemann & Paul Grossman, Employment Discrimination Law
ch. 14.IV.D.2 (4th ed. 2007) ("Where the plaintiff relies on
temporal proximity to bolster causation, it is the plaintiff's
burden to establish that temporal proximity with adequate
precision.").

---

[5] Paragraph forty (40) of Culver's Second Amended Complaint alleges
that:

> The positions that the plaintiff sought after he had
> filed his EEOC charge include but are not limited to the
> following: Physical Education and Health positions at
> Huffman High School; Health Education at Jackson Olin
> High School; Physical Education in the Instruction Pool;
> Head Football Coach at Birmingham City Schools; Head
> Football Coach at Carver High School; Head Football
> Coach at Woodlawn High School; Head Basketball Coach at
> Hayes, Huffman, Jackson Olin, and Woodlawn High Schools;
> Head Basketball Coach - Girls at Hayes, Huffman, Jackson
> Olin, Woodlawn, and (again) Hayes High Schools; Head
> Basketball Coach - Boys, Jackson Olin and Carver High
> Schools; Head Football Coach at Carver High School;
> Physical Education Teacher - Birmingham City Schools;
> Head Football Coach at Huffman, Jackson Olin, and
> Woodlawn High Schools; Head Basketball Coach - Boys
> Carver, Huffman, Jackson Olin, Parker and Woodlawn High
> Schools; Head Basketball Coach - Girls at Carver,
> Huffman, Jackson Olin, Parker, Woodlawn, (again) Carver,
> and Parker High Schools; Head Volleyball Coach at
> Huffman and Ramsey High Schools; and Head Football Coach
> at Carver High School.

(Second Am. Comp. ¶ 40.)

Culver does not offer any evidence other than the temporal proximity of his EEOC claim and the BBOE's refusal to hire him to establish a causal connection between the two actions. However, he fails in this endeavor. He does not give the dates on which he applied for each position, nor does he give the dates on which the BBOE made its decisions regarding those positions. Rather, he simply alleges that he applied for "the following" positions after filing his EEOC claim. Such an allegation does not "establish [] temporal proximity with adequate precision." I Barbara T. Lindemann & Paul Grossman, Employment Discrimination Law ch. 14.IV.D.2 (4th ed. 2007). Accordingly, summary judgment is due to be granted on Culver's claims for retaliation under Title VII.

IV. *Culver's Title VII Failure to Hire/Promote Claim*

A plaintiff alleging a claim of disparate treatment under Title VII carries the initial burden of establishing a *prima facie* case of discrimination, "which raises a presumption that the employer's decision was more likely than not based upon an impermissible factor." *Richardson v. Leeds Police Dept.*, 71 F.3d 801, 805 (11th Cir. 1995) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The initial burden of establishing a *prima facie* case may be satisfied by evidence showing that "(1) the applicant belonged to a racial minority; (2) he applied and was qualified for the job; (3) he was rejected; and (4) after his rejection, the position remained open and the employer continued to

seek qualified applicants." *Id.* n.5 (citing *McDonnell Douglas Corp.,* 411 U.S. at 802). A plaintiff's burden of making out a prima facie case of disparate treatment "is not onerous." *Richardson*, 71 F.3d at 806 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Once a plaintiff has made out a *prima facie* case, the burden of going forward shifts to the defendant to articulate, through the introduction of admissible evidence, "a legitimate, nondiscriminatory reason for its decision." *Id.* Once the defendant has articulated a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the defendant's reason is pretextual. *Id.* When a plaintiff seeks to establish pretext by showing that he possessed superior qualifications to the candidate actually hired by the employer, the "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004).

It is clear that Culver has carried his light burden of making out a *prima facie* case. Although the initial element of a plaintiff's *prima facie* case is often formulated as requiring that the plaintiff show that he is a member of a racial minority, the Supreme Court has noted that Title VII prohibits "[d]iscriminatory

preference for Any group, Minority or Majority." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971).  Thus, the first factor of Culver's *prima facie* case is satisfied by his showing that he is white, and that the individuals ultimately hired for the positions he sought are black.

Although defendants dispute that Culver was qualified to coach **tackle** football, it is clear that his experience as a high school and semi-pro tackle football player, his experience coaching flag football in the military, his experience coaching basketball, and his bachelor's degree in recreation administration gave him at least enough qualifications to pass the second hurdle of his *prima facie* showing.  As already pointed out, defendants do not deny that Culver was generally qualified.  The inquiry at this point is not whether the other candidates were **more** qualified than Culver. Rather, it is simply whether Culver possessed the minimum qualifications to be hired for the position, and that is conceded.

Moreover, with the exception of the health/physical education teaching position at Huffman in September 2006, the head girls basketball coaching position at Jackson-Olin in November 2006, and the head girls basketball coaching position at Huffman in the fall of 2006, it is undisputed that Culver actually applied to the positions at issue.  Defendants argue that Culver is unable to make out a *prima facie* case as to the positions mentioned above because he failed to apply for them.  However, these positions were not

posted, and therefore Culver would have been unable to apply for them.  When there is no formal mechanism for a person interested in being considered for a position to communicate that interest, informal communication suffices.  *See Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984); *see also Abrams v. Baylor College of Medicine*, 581 F. Supp. 1570, 1579 (S.D. Tex. 1984), *aff'd in part and rev'd in part on other grounds*, 805 F.2d 528 (5th Cir. 1986).  Here Culver sufficiently communicated his interest in the health/physical education teaching position at Huffman in September 2006, the head girls basketball coaching position at Jackson-Olin in November 2006, and the head girls basketball coaching position at Huffman in the fall of 2006.  The fact that he did not formally apply for these positions, where there was no formal application process, does not prevent him from meeting his burden.

The third and fourth elements of Culver's *prima facie* case are undisputed.  It is clear that he was not hired for the positions that form the basis of his claims.  Moreover, it is clear that in each instance a black candidate was selected to fill the position Culver sought.  Therefore, Culver has made out a *prima facie* case of disparate treatment under Title VII.

Defendants assert that the candidates selected were simply more experienced coaches than Culver was.  These were inherently subjective determinations.  However, as the Eleventh Circuit has

noted "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000).  In each case, defendants sufficiently articulates the subjective difference in qualifications that gave rise to the choice to hire a candidate other than Culver. Additionally, in the cases where the previous coach or teacher left the position at issue vacant mid-season or mid-school year, defendants adequately articulate legitimate nondiscriminatory reasons for the appointments that were made.  Making an interim appointment of an individual currently teaching and/or coaching at that school so as to avoid the disruptive effects of the hiring process mid-season or mid-school year is an appropriate aim for the BBOE.  Accordingly, defendants have met their low burden of articulating a legitimate nondiscriminatory, if repetitive *ad nauseam*, reason for their hiring decisions.

As noted above, when a plaintiff seeks to establish pretext by showing that he possessed superior qualifications to the candidate actually hired by the employer, the "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004).

"Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030.

With regard to the head girls basketball coaching position at Jackson-Olin in November 2006, the head girls basketball coaching position at Huffman in the fall of 2006, the head football coaching position at Jackson-Olin in the fall of 2006, and the head girls basketball coaching position at Huffman in October 2007, Culver's argument of pretext amounts to nothing more than a quarrel with the BBOE's judgment of his qualifications and experience versus those of the candidates actually hired.  Culver makes much of the fact that Michael Clisby had previously been suspended from coaching "for playing a football player who was not enrolled at Jackson-Olin."  (Pl.'s Br. in Opp'n, at 25.)  While rehiring Clisby to coach sports after he had committed a serious violation of Alabama High School Athletic Association ("AHSAA") rules may not have been wise, it did not violate any stated hiring policy of the BBOE, nor did it render Clisby unqualified for the position according to the criteria established by the BBOE.

With regard to the head girls basketball coaching position at Huffman in the fall of 2006, Culver merely argues that he was more qualified than Kathi Johnson.  Culver is unable to produce any evidence tending to show that Johnson was unqualified for the

position according to the criteria established by the BBOE.  The disparities in qualifications between Johnson and Culver, if any, are simply not so great that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004).

With regard to the head girls basketball coaching position at Huffman in October 2007, Culver simply offers no evidence at all of pretext.  As noted above, Culver's contention that Jeff Hill did not possess a valid teaching certificate is inaccurate.  Hill was hired for the head girls basketball coaching position at Huffman in October 2007.  At the time, Hill's teaching certificate was valid and was not set to expire until June 30, 2008.  (Ex. 28 to Pl.'s Br. in Opp'n.)  Culver's only other argument that defendants' proffered reasons are pretextual is that Hill violated AHSAA rules by entering a student in a track relay under an assumed name in April 2008.  Regardless of the severity of Hill's conduct, Hill's infractions did not occur until six (6) months after defendants had made the decision to hire Hill over Culver.  (Ex. 29 to Pl.'s Br. in Opp'n.)  Therefore, Hill's violation of AHSAA rules had no bearing on the BBOE's decision to hire Hill and therefore is not probative of whether defendants' proffered reasons for hiring Hill are pretextual.

It is for these reasons that summary judgment is due to be

granted as to Culver's Title VII disparate treatment claims, insofar as they concern the head girls basketball coaching position at Jackson-Olin in November 2006, the head girls basketball coaching position at Huffman in the fall of 2006, the head football coaching position at Jackson-Olin in the fall of 2006, and the head girls basketball coaching position at Huffman in October 2007. However, as to the health/physical education teaching position at Huffman in September 2006, the head football coaching position at Woodlawn in August 2007, the head football coaching position at Carver in September 2007, the head girls basketball coaching position at Hayes in October 2007, and the head football at Jackson-Olin in March 2008, factual issues remain regarding whether Culver was not hired because of racial bias, thus precluding summary judgment as to those refusals to promote, transfer, or hire.

Although not dispositive, it is "suspicious where it is alleged that established rules were bent or broken to give a non-minority applicant an edge in the hiring process." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 644 (11th Cir. 1998). Job postings for coaching positions in the System state as a "job type description" that an applicant must have, *inter alia*, "[a] valid Alabama Professional Educator's Certificate," and that an "[a]pplicant must either currently serve as a full-time academic teacher or obtain a full-time academic teacher position with the

Birmingham City Schools system." (*See, e.g.*, Ex. 31 to Pl.'s Br. in Opp'n.) Job postings for teaching positions in the System also state as a "job type description" that an applicant must have, *inter alia*, "[a] valid Alabama Professional Educator's Certificate." (*See, e.g.*, Ex. 30 to Pl.'s Br. in Opp'n.) Defendants argue that these "job type descriptions" are not requirements that an applicant must absolutely meet to qualify for a position. Instead, defendants maintain that the BBOE has discretion to depart from those "job type descriptions" as it sees fit pursuant to a clause in the list of qualifications, which states "such alternatives to the above qualifications as the Board may find appropriate and acceptable." (Ex. 31 to Pl.'s Br. in Opp'n.)

The court notes that even in the discretionary clause, the job posting itself refers to the qualities listed as "qualifications," suggesting that one does not **qualify** for a position unless he or she possesses those attributes. This clause attempts to give the BBOE *carte blanche* when it comes to deciding whether an applicant meets its qualifications. In fact, to allow the BBOE to depart from the **stated** qualifications for a job whenever the BBOE finds it "appropriate and acceptable" is to render the positions without any real qualifications at all and to create an environment for racial discrimination.

Defendants do not dispute that Demetrius Mitchell, who was

hired for the health/physical education teaching position at Huffman in September 2006, Stacey Gill, who was hired for the head football coaching position at Woodlawn in August 2007, Beshaw Smith, who was hired for the head football coaching position at Carver in September 2007, and Shawn Gregory, who was hired for the head football at Jackson-Olin in March 2008, all lacked a valid teaching certificate at the time they were hired. Additionally, defendants do not dispute that Ralph Williams, who was hired for the head girls basketball coaching position at Hayes in October 2007, was not "a full-time academic teacher" at the time he was hired, nor did he thereafter "obtain a full-time academic teacher position with the Birmingham City Schools system." This disturbing departure from the BBOE's established qualifications for teaching and coaching positions, combined with Culver's *prima facie* case, is enough to create a real issue of fact as to whether Culver was the subject of discrimination in the hiring process for these positions. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) ("[P]laintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."). Accordingly, summary judgment is due to be denied as to Culver's Title VII disparate treatment claims, insofar as they concern the health/physical education teaching position at Huffman in September

2006, the head football coaching position at Woodlawn in August 2007, the head football coaching position at Carver in September 2007, the head girls basketball coaching position at Hayes in October 2007, and the head football at Jackson-Olin in March 2008.

The failures to promote or to hire that will be eliminated by summary judgment may or may not be admissible evidence on the failures to promote or hire that survive summary judgment.

## CONCLUSION

For the foregoing reasons, the court will, by separate order, deny defendants' motion for summary judgment as to Culver's Title VII disparate treatment claims, insofar as they concern the health/physical education teaching position at Huffman High School in September 2006, the head football coaching position at Woodlawn High School in August 2007, the head football coaching position at Carver High School in September 2007, the head girls basketball coaching position at Hayes High School in October 2007, and the head football at Jackson-Olin High School in March 2008. As to all other claims, summary judgment will be granted.

DONE this 17th day of December, 2009.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE